***********
This matter was reviewed by the Full Commission based upon the record of the proceedings before Deputy Commissioner Holmes, along with the briefs and arguments on appeal. The Full Commission MODIFIES the Deputy Commissioner's holding and enters the following Opinion and Award.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at and following the hearing on 18 May 1998 as:
 STIPULATIONS
1. The dates of the alleged injuries, which are the subject of these claims, are September 26, 2001 and November 28, 2001.
2. On such dates, the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act;
3. On such dates, the Employer-Employee relationship existed between the Employee-Plaintiff and the Employer-Defendant;
4. On such dates, the Employer-Defendant employed three or more employees;
5. Employer-Defendant is insured by AIG Claims on September 26, 2001 and Zurich North America on November 28, 2001;
6. Plaintiff's average weekly wage for each of the above dates is $876.86.
7. Plaintiff's last day worked for Employer-Defendant was December 17, 2001, and plaintiff received short-term disability benefits for 20 weeks (January 14, 2002 through June 2, 2002) at $40.00 per week through the employer at no cost to plaintiff.
 ***********
Based upon all of the competent, credible, and convincing evidence of record, the Full Commission finds the following additional:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, the plaintiff was 57 years old. Plaintiff was a truck driver for Boren Brick.
2. Plaintiff's job duties required him to load and unload bricks, blocks, rock, and other similar materials to and from various job sites.
3. On September 26, 2001, plaintiff was delivering brick, block, and mortar to a house in Brown Summit, North Carolina. He set the load underneath a large walnut tree. He believed this to be the best place to place the load because this was the closest he could get to the footings. While attempting to unload these bricks, blocks, and mortar, he continuously was stepping on, over, and around walnuts while simultaneously using the hand controls to maneuver the boom on the truck. Plaintiff stepped on a walnut and twisted his left knee.
4. Initially this was painful but the pain subsided and the plaintiff continued with his normal work routine. Given that the plaintiff was able to continue working, and that he reported the work injury to his physician, the plaintiff reasonably did not report this event to his supervisor within 30 days. The defendants were not prejudiced by this delay.
5. Because the pain began worsening, on October 15, 2002, plaintiff went to see his family doctor, Dr. Dale Dreiling. Plaintiff reported to Dr. Dreiling that "Approximately three or four weeks ago, he slipped on a walnut and twisted his left knee." Dr. Dreiling's physical examination could not rule out a meniscus tear.
6. Dr. Dreiling advised plaintiff that if the pain did not subside over the next few weeks he would schedule an appointment with an orthopedic surgeon. Dr. Dreiling did not limit plaintiff's work duties.
7. Plaintiff, of his own initiative, began wearing an elastic knee brace purchased from a drug store. His knee remained painful, but Mr. Dean was able to continue his regular job duties.
8. On November 28, 2001, the plaintiff went to pick up some blocks and empty pallets that were left after a job. These blocks and pallets were not stacked as the dispatcher had been advised, but were, instead, scattered on the shoulder of the road. Ordinarily a pickup job entailed the remaining blocks sitting on pallets, shrink-wrapped. His job would be to use the boom to lift the pallets onto the truck. On this instance, he had to scramble about the shoulder of the road gathering up bricks, placing them on empty pallets and shrink-wrapping them. While doing this, he twisted his knee again when a pallet came to rest on his steel-toed boot and plaintiff then had to unlace his boot and pull his foot out of it.
9. Plaintiff returned to his employer's premises and reported this accident to Paige Jackson.
10. Because his pain became worse after this second event, Plaintiff called Dr. Dreiling. Dr. Dreiling's office scheduled him an appointment to see Dr. John Rendall, an orthopedic surgeon, on December 18, 2001.
11. Plaintiff completed an intake sheet at Dr. Rendall's office that was attached to Dr. Rendall's deposition as Exhibit 1. This intake sheet indicates that plaintiff had an injury at work.
12. Dr. Rendall examined Mr. Dean and took him out of work immediately.
13. Plaintiff's total disability as of the December 18, 2001 removal from work was due to his left knee condition.
14. At the December 28, 2001 visit, Dr. Rendall noted strongly positive McMurray's signs indicating a torn meniscus tendon.
15. While Ms. Bullis and Ms. Shields deny that plaintiff cited an accident date of November 28, 2001, both Ms. Jackson and Mr. Dean are clear that he did. It is found that in this matter Ms. Jackson and Mr. Dean are found to be credible.
16. Dr. Rendall attempted to schedule plaintiff for arthroscopic knee surgery on December 19, 2001; however, Mr. Dean failed a pre-operative examination. It was later determined that plaintiff had heart trouble which precluded a safe operation. Plaintiff subsequently had a pacemaker installed. After a period of stabilization, Dr. Rendall performed arthroscopic surgery on plaintiff's left knee in January, 2003. Dr. Rendall also performed surgery on plaintiff's right knee at the same time. Dr. Rendall was of the opinion that the surgery on the right knee was unrelated to the workers' compensation claims. Dr. Rendall felt that the tear he found in the left knee was consistent with the type anticipated from "stepping on a walnut and twisting the knee."
17. The plaintiff injured his knee in the September 26, 2001 incident. The subsequent November 28, 2001 incident resulted in an increase of symptoms.
18. Dr. Rendall testified that plaintiff remains totally disabled due to the left knee injury.
19. All treatment rendered by Dr. Dreiling and Dr. Rendall has been necessary to affect a cure or provide relief for plaintiff's left knee injury.
20. There is insufficient evidence to show that defendants defended this claim without basis.
 ***********
The foregoing stipulations and findings of fact engender the following:
 CONCLUSIONS OF LAW
1. Plaintiff sustained a compensable injury by accident on September 26, 2001. N.C. Gen. Stat. § 97-2(6).
2. The plaintiff had reasonable excuse for not reporting the September 26, 2001 injury by accident within 30 days and the defendants were not prejudiced by the delay. N.C. Gen. Stat. §97-22.
3. As a result of the September 26, 2001 injury by accident, plaintiff became disabled and is entitled to receive temporary total disability compensation from defendant-carrier AIG Claims beginning December 18, 2001 and continuing until he is able to return to work at the same or greater wages or until further order of the Commission. N.C. Gen. Stat. § 97-29.
4. Plaintiff is entitled to all medical treatment to his left knee, including the surgery, required as a result of the compensable injury of September 26, 2001. This medical treatment is to be paid by defendant-carrier AIG Claims. N.C. Gen. Stat. §97-25.
5. Plaintiff's average weekly wage of $876.86 results in a weekly compensation rate of $584.57. N.C. Gen. Stat. § 97-2(5).
6. Defendants are entitled to a credit for the short-term disability paid to plaintiff from January 14, 2002 through June 2, 2002. N.C. Gen. Stat. § 97-42.
 ***********
In accordance with the foregoing stipulations, findings of fact, and conclusions of law, the Full Commission enters the following:
 AWARD
1. Subject to the credit for disability benefits paid and attorney's fees hereinafter approved, defendant-carrier AIG Claims shall pay plaintiff compensation benefits at the rate of $584.57 per week beginning December 18, 2001 and continuing until he is able to return to work at the same or greater wages or until further order of the Commission. Any accrued amount shall be paid in one lump sum.
2. Defendant-carrier AIG Claims shall pay all medical treatment to plaintiff's left knee, including the surgery, incurred or to be incurred as a result of the September 26, 2001 injury.
3. A reasonable attorney fee of twenty-five percent of the compensation due plaintiff under paragraph one of this Award is approved for plaintiff's counsel and shall be paid as follows: twenty-five percent of the lump sum due plaintiff shall be paid directly to plaintiff's counsel. Thereafter, every fourth check shall be sent directly to plaintiff's counsel.
4. Defendant-carrier AIG Claims shall pay the costs of this action.
 S/_______________ CHRISTOPHER SCOTT COMMISSIONER
CONCURRING:
 S/_______________ DIANNE C. SELLERS COMMISSIONER
 S/_____________ PAMELA T. YOUNG COMMISSIONER